## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICTOF PENNSYLVANIA

GARY STRAUSSER, Individually, and    :
STRAUSSER ENTERPRISES, INC.    :     CIVIL ACTION
1108 Van Buren Road    :
Easton, Pa. 18045    :
   :     No.:
   vs.    :
   :
TOWNSHIP OF FORKS,    :
1606 Sullivan Trail    :
Easton, Pa. 18040    :
   :
Karl Kline, Esquire    :
1606 Sullivan Trail    :
Easton, Pa. 18040    :
   :
David L. Howell    :
1606 Sullivan Trail    :
Easton, Pa. 18040    :
   :

### PLAINTIFFS' COMPLAINT

And now comes the Plaintiffs Gary J. Strausser ("Strausser") and Strausser Enterprises, Inc. ("SEI") to allege and aver the following as and for their Complaint against the Defendants the Township of Forks' ("the Township") and David L. Howell ("Howell") and  Karl Kline, Esquire ("Kline"):

**I.    Parties**

1.    The Plaintiff Strausser is an individual with an address at 1108 Van Buren Road, Easton, Pa. 18045.

2.    The Plaintiff SEI is a Pennsylvania corporation with a principal place of business at 1108 Van Buren Road, Easton, Pa. 18045.

3.    Upon information and belief the Township is a municipality organized and existing under the laws of the Commonwealth of Pennsylvania with an address at 1606 Sullivan Trail, Easton, Pa. 18040.

4.    Upon information and belief the Defendant Howell is an individual with an address at 1606 Sullivan Trail, Easton, Pa. 18040.

5.    Upon information and belief the Defendant Kline is an individual with an address at 1606 Sullivan Trail, Easton, Pa. 18040.

6.    Upon information and belief, Defendant Howell is and was at all times relevant the Chairman of the Township's Board of Supervisors.  In that capacity, Defendant Howell is ultimately responsible for the administrative and fiscal control and policymaking of the Township, including the commencement and prosecution of legal proceedings.  Howell is sued in both his individual and personal capacity.

7.    Upon information and belief, Defendant Kline is and was at all times relevant the Township's Solicitor.  In that capacity, Defendant Kline is and was ultimately responsible for the legal and litigation policymaking and/or the enforcement of such policies of the Township, including commencement and prosecution of legal proceedings.   Kline is sued in both his individual and personal capacity.

8.    At all relevant times herein, Defendants were "persons" for purposes of 42 USCA § 1983, and acted under color of law to 1) deprive Plaintiffs of their Constitutional rights to Equal Protection, and/or 2) to retaliate against the Plaintiffs for the exercise of their Constitutional rights under the First Amendment to seek judicial redress, by means of initiating and prosecuting baseless lawsuits, unmerciful public attacks on the Defendants' reputation, repeated public charges and accusations that the Plaintiffs had engaged in criminal and

outrageous conduct and the selective enforcement of zoning and building laws, regulations and purported rights to impede the Plaintiffs' development as set forth more fully below.

9.     Upon information and belief, Defendant Howell, as Chairman of the Township's Board of Supervisors, was aware of, approved and/or acquiesced in, the unconstitutional restrictions, conditions and retaliation described more fully below and failed to take necessary and appropriate action.    Defendant Howell therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and/or demonstrated deliberate indifference.

10.     Upon information and belief, Defendant Kline, as Solicitor to the Township's Board of Supervisors, was aware of, approved and/or acquiesced in, the unconstitutional restrictions, conditions and retaliation described more fully below and failed to take necessary and appropriate action. Defendant Kline therefore subjected or caused Plaintiffs to be subjected to unconstitutional conditions and restrictions, and/or demonstrated deliberate indifference.

## II.     Jurisdiction and Venue

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 1983.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 in that a) a substantial part of the events giving rise to this instant claims occurred in this District or b) the Defendants are subject to personal jurisdiction in this District.

## III.     Factual Background

13.     SEI acquired several tracts of land in Forks Township in January 2000, one of them being then known as the Bixler tract, for the purpose of developing that land in to a planned residential development known today as the Riverview Estates and Riverview Country Club

3

("the Development"). At the time that SEI acquired the Bixler tract it was zoned for a planned residential development.

14.     On or about April 20, 2000, the Township gave SEI tentative approval for the Riverview estates planned residential development plan.

15.     The Development was broken up into phases and some of the phases have been sold. SEI has retained several phases including phases 5, 6 and 7.

16.     In retaliation for the exercise of their rights under the First Amendment of the United States Constitution to object to the Township's actions, and to seek judicial redress for the Township's actions, the Township attempts, through the use of baseless lawsuits, the selective and disparate enforcement of development rights and ordinances, and the imposition of unreasonable and unconscionable conditions on development, to thwart, and now terminate the Plaintiffs' development rights.

17.     The Township's vendetta stems, initially, from a failed attempt by the Township to overcharge the Plaintiffs hundreds of thousands of dollars for inspection, engineering and legal fees as a result of the Riverview Estates project.

18.     More particularly, the Township had a number of accounting and billing problems in the early 2000s. In fact, the Township did not send out any bills at all from between February 2004 to the end of 2005.

19.     In or about September 2005, SEI received a shocking bill or bills from the Township for approximately $250,000.00 in alleged arrearages and a demand of approximately another $250,000.00 to replenish certain escrow accounts related to the Development.

20.     The Plaintiffs were astonished at the bill(s) because they knew that, at the time that they received the bill(s), they were current or close to current with the Township.

21.    The Plaintiffs met numerous times with the Township over the bill(s) and at first the Township refused to even provide backup but eventually the Township relented.

22.    After several meetings with the Township the Plaintiffs learned that the Township's recordkeeping and billings were in such shambles that the Township had actually billed SEI for services that SEI had already paid, billed SEI for services performed by the Township's professionals for the projects of other developers and even billed SEI for services performed by the Township's professionals *for other municipalities*.  SEI also learned that the Township had improperly destroyed and/or shredded certain of its accounting documents relating to the bills and to SEI's past payments.

23.    After several meetings and protracted negotiations, the Township threatened to stop all inspection, legal approvals and engineering work on Riverview Estates unless SEI paid the sum total of the amount that the Township claimed was due.

24.    Fearing that the Riverview Estates project would be shut down, the Plaintiffs exercised their rights under and pursuant to the First Amendment of the United States Constitution to object to the Township's unlawful treatment and to petition the Court for relief. More particularly, in or about June 28, 2007, SEI sued the Township in the Court of Common Pleas of Northampton County in the action captioned *Strasser Enterprises, Inc. v. Township of Forks*, Docket No. C0048CV2007-005131 ("The Fee Case").

25.    The above-mentioned lawsuit resulted in an arbitration proceeding wherein the Township's initial charges were drastically reduced and SEI was required to pay the Township only $68,483.45 for work done through May 31, 2008.  Indeed, most of that amount was for work done after the exorbitant initial bill, meaning that the Township was awarded a negligible

5

amount of its original claim for arrearages, if any. In addition, SEI was not required to replenish the escrows with another $250,000.00.

26.    In short, the lawsuit was, effectively, a rebuke of the Township's bill(s), its accounting system and its demands.

27.    The fact that SEI objected to the Township's bills, and sued the Township over its threat to close down the Development has prompted and caused the Township to retaliate against the Plaintiffs at every opportunity including but not limited to the filing and continuation of meritless lawsuits, the publication of false accusations of criminal, immoral and horrific conduct, and attempts to delay, frustrate and ultimately terminate the Plaintiffs' development rights.

28.    By way of example, in or about October 15, 2007 the Township commenced a baseless lawsuit against the Plaintiffs in the Court of Common Pleas of Northampton County captioned *Township of Forks v Strausser, et al*, Docket No. C0048CV2007-8272 ("the Tree Case").

29.    The Tree Case stems from the Plaintiffs' removal of eight maple trees near the easterly edge of the Bixler Tract ("The Trees"). The Township, however, without any factual or legal basis sued the Plaintiffs' claiming that *it* owned the Trees. The Township's claim was based on nothing more than the fact that The Trees abutted the westerly edge of a Township right-of-way known as Old River Road.

30.    Further, as a result of the removal of the Trees, Howell, Kline and other Township supervisors, employees and planning commission members publicly excoriated SEI and Strausser accusing them publicly of having committed "criminal mischief", an "atrocious act", an "act of greed" and an act of "vandalism." Howell even trespassed on the Plaintiff's property to place homemade signs with the phrase "RIP" on each stump as a newspaper publicity stunt.

31.    The law in this Commonwealth is clear and unequivocal on the principle that a municipality does not own the trees and shrubs that abut a right-of-way.  The law in this Commonwealth irrefutably provides that the owner of the land that abuts the right-of-way, i.e. SEI, owns such trees and shrubs and has the indisputable right to remove them.  The Township's attacks and its lawsuit were, therefore, false and meritless.

32.    The Township's misguided public attacks on the Defendants had the effect of stirring the passions of Township residents to despise and loathe the Defendants.

33.    As a result of the false charges by Township officials, residents began calling for retaliation in the form of the prosecution of a lawsuit, and the Township putting a hold on the Defendants' development projects.

34.    By way of example in a editorial *The Express-Times* published on August 20, 2007, one resident said that he was shocked and amazed that the Plaintiffs would remove Township trees without permission and urged the Supervisors to take "the strongest possible civil and legal action against" them.

35.    The Plaintiffs attempted, in good faith, to dissuade the Township from continuing the lawsuit.  For example, by letter dated July 13, 2009 to the Township's counsel, the Plaintiffs, by and through their counsel, laid out in detail the facts and law regarding the ownership of the land and the Trees.   The letter, unequivocally advised the Township that its claims were meritless.

36.    A true and correct copy of the July 13, 2009 letter from the Defendants' counsel to the Township's counsel is attached hereto as Exhibit "A".

37.    Neither the Township nor its counsel ever even responded to the July 13, 2009 letter.

38.    In addition, the Township evaded all of the Plaintiffs' efforts to obtain legitimate discovery in the Tree Case regarding the Township's allegation that it owned the Trees in order to avoid having the case dismissed.

39.    Rather than acknowledge the demerits of its case and withdraw it, solely to retaliate against the Plaintiffs, the Township instead, on August 3, 2009, actually filed an Amended Complaint which reasserted all of its meritless claims to ownership of the Trees and added an additional meritless claim alleging that the removal of the trees violated the Township's then existing PRD Zoning Ordinance.

40.    The basis for the new claim filed in 2009 was that the removal of the eight trees some two years earlier now allegedly violated a zoning ordinance.  The Township's amended complaint alleges that its zoning ordinance at the time required that "Existing trees shall be preserved wherever possible."  The Township's new claim seeks an outrageous penalty of $500/day.

41.    The Township's claim for an alleged violation of the zoning ordinance is meritless for a variety of reasons, not the least of which is the fact that the alleged violation occurred over two years ago and there was never any complaint, let alone citation, that the removal of the Trees was a zoning violation.

42.    In fact, the removal of the Trees did not violate the zoning ordinance.

43.    The zoning ordinance only required trees to be preserved "wherever possible." The Township knew that it was not "possible" to "preserve" The Trees because, *inter alia*, the Township's plans to widen the nearby intersection of Route 611 and Frost Hollow Road require that the Trees be removed to accommodate the relocation of certain utility poles.

8

44.    Further, assuming, *arguendo*, that the removal of The Trees was a zoning violation, the Township's attempt to enforce it against SEI was disparate and unequal. In fact, other similarly situated developers in the Township, in the same general vicinity as Riverview Estates, have taken down similar trees and similar tree lines, without being sued or even cited for a zoning violation.  In fact SEI has been singled out, and treated differently from other similarly situated developers in terms of the application of the zoning laws because SEI has sued the Township and exposed the Township's meritless claims to The Trees.

45.    In addition, the Township attempted to use the baseless Tree Case as a pretext to tie up or burden the Plaintiffs' development rights.  For example at a public Planning Commission Meeting, wherein SEI was seeking to have the Commission recommend taking ownership of one of the roads in Riverview Estates, SEI was, again, chided over cutting down the Trees. After dishing out that verbal abuse, Forks Township Planning Commission Member (now Forks Township Supervisor) David Billings stated on the record that it was his belief that the Township had actually adopted a policy that it would not grant SEI any approvals at all until SEI settled the Tree case.

46.    The Township obviously has no legal right to tie up SEI's development activities in retaliation for SEI's exercise of its First Amendment rights.

47.    By September 4, 2009, after making an unequivocal written record establishing that the Township knew that it did not own The Trees, and the Township's obdurate refusal to withdraw its claims, and it's refilling of those claims and others, the Plaintiffs' had finally had enough of the Township's conduct in regards to The Trees.  On that date, after having given the Township every reasonable opportunity, the Plaintiffs again exercised their First Amendment right to object to, and seek judicial redress for the Township's bad faith conduct, by filing a

9

counterclaim in the Tree Case for, *inter alia*, abusive litigation. The Township's brazen retaliation showed itself almost immediately.

48.     First, in order to formulate a strategy for how to retaliate for the Plaintiffs' counterclaim, Howell and Kline hastily called an Executive Committee meeting of the Board of Supervisors.

49.     Upon information and belief, at that hastily called meeting, Howell and Kline the Executive Committee of the Board of Supervisors, as retaliation, decided to pursue additional baseless litigation.

50.     In order to effectuate their new plan, on September 18, 2009, a mere two weeks after the Plaintiffs sued the Township for pursuing abusive and unfounded litigation, Kline and Howell directed the Township's attorney, Steven N. Goudsouzian, Esq., to send a letter to Strausser demanding that SEI replenish certain escrow accounts to the sum total of $256,280.00.

51.     The letter threatened a lawsuit if the escrows were not replenished by September 30, 2009.

52.     The demand to replenish the escrows was an obvious pretext for more retaliation. The replenishment of those escrows served no legitimate Township interest and certainly no legitimate interest that arose in the two week period of time after the Plaintiffs asserted their counterclaim.

53.     First, the escrow accounts in question have been at their current levels since at least 2006. Until the Plaintiffs sued the Township for abusive litigation, there had never even been a request to replenish those accounts.

54.    In addition, the phases covered by the escrow accounts in question are all either completed or substantially completed. There is, therefore, no need to replenish those accounts especially at the levels demanded.

55.    Further, the Township does not, as a matter of policy or practice, require other similarly situated developers to replenish escrow accounts for jobs that are nearing completion. In fact, SEI was advised by a former Township manager Cathy Kickline that, in keeping with Township policy and practice, as the various phases at Riverview Estates wound down, as they have, SEI would not be required to replenish the escrow accounts in question. SEI was thus targeted with disparate enforcement of the Township's escrow rights solely in retaliation for exercising its First Amendment rights.

56.    On or about October 5, 2009 the Township followed through on its threats and commenced another meritless, retaliatory case against SEI to compel SEI to replenish the escrow accounts in the Court of Common Pleas of Northampton County captioned *The Township of Forks v Strausser Enterprises, Inc.*, No. C0048CV2009-10928 ("the Escrow Case").

57.    On that same date, as an act of further retaliation, the Township commenced another meritless case against Strausser in the Court of Common Pleas of Northampton County captioned *The Township of Forks v Gary J Strausser*, No. C0048CV2009-10929 ("the PRD Case").

58.    In the PRD Case the Township actually seeks a judgment that Strausser's development rights to Phase 5 and 6 are, and be declared, permanently terminated or forfeited.

59.    When SEI acquired the Bixler tract, it was zoned for planned residential development. Phase 6 is actually approved for condominiums. The Township no longer has a zoning ordinance for planned residential developments. By attempting to terminate the

Plaintiff's development rights the Township is actually, therefore, attempting to take away the economically beneficial use of the property and/or to defeat the Plaintiffs' reasonable investment-backed expectations without any compensation.

60.    The Fifth Amendment, made applicable to state and local governments under the Fourteenth Amendment, proscribes the taking of private property for public use without just compensation.

61.    The Township's attempt to terminate the PRD for Phases 5 and 6 is a taking because if the Plaintiffs are denied the right to develop those phases under PRD zoning that existed at the time SEI acquired the tract the Township will have prevented the best use of property and extinguished a fundamental attribute of ownership that SEI was depending on when it acquired the property.

62.    Further, the purported basis for the termination of Strausser's development rights in Phases 5 and 6 is the fact that the underlying board approval for PRD has expired.

63.    The alleged expiration of the PRD as to phases 5 and 6, however, is just another thinly veiled pretext for retaliation.

64.    The Township alleges that the Plaintiffs' development rights were contingent on the submission of final plans by no later than April 20, 2006.

65.    The Township alleges that the Plaintiffs lost their development rights by failing to submit final plans by that date.

66.    The Township, however, ignores that, notwithstanding the fact that final plans had not been submitted by April 20, 2006, the Township has never enforced and actually waived the aforementioned requirement to submit final plans by a certain date and the Plaintiffs' have relied on that waiver to their detriment.

67.    In fact, in reliance on the Township's waiver, the Plaintiffs have made a number of substantial improvements, changes and repairs, including, *inter alia*, street trees, rock liners etc. which the Township requested them to make.  SEI had no obligation to do that additional work but did it in reliance on the Township's agreement not to enforce the plan submission deadlines.  In addition, in reliance on the Township's promise to waive the deadlines, SEI actually conveyed over two acres of land to the Township for purposes of housing a pump station.

68.    Notwithstanding the waiver of the plan submission deadlines and notwithstanding the understanding that the deadline for phases 5 and 6 would not be enforced, and notwithstanding the Plaintiffs good faith performance of a number of the improvements to their substantial detriment in reliance on the aforementioned waiver and understanding, the Township, without even making a demand, one month after the Plaintiffs' exercised their First Amendment rights by suing the Township for a blatantly abusive use of process, now claims that because the plans were not submitted by the initial deadline, phases 5 and 6 are terminated.

69.    The Township has retaliated in ways other than the prosecution of baseless litigation.  SEI has also been subjected to a rash of inexplicable hurdles and obstacles imposed by the Township on further development of other phases.

70.    By way of just one example SEI had an obligation to construct certain roads in Riverview Estates-one being Winchester Drive.

71.    In order to secure the completion of the improvements, SEI was required to deliver to the Township an irrevocable letter of credit ("the LOC") in an amount equal to 110% of the estimated cost to complete the improvement.

13

72.     When SEI notified the Township that it intended to apply the wearing course to Winchester Drive, the Township told SEI that it would not inspect the application of the wearing course, which meant that the Township would not, therefore, release funds from the LOC for the completion of that work.

73.     The Township's stated position was that it would not inspect the road because it claimed that the base course for Winchester Drive was in disrepair and was not fit for the application of the wearing course.  The Township advised SEI that in order to apply the wearing course it, basically, had to reapply the base course.

74.     Reapplying or remilling the base course would have cost SEI at least an additional $150,000 over and above the costs associated with the application of the wearing course.

75.     There was no legitimate reason to impose any additional conditions on SEI and the Township offered none.

76.     In fact, once the wearing course was applied, the Township was legally obligated inspect the work and release monies from the LOC.

77.     SEI knew that the base course was in a condition suitable to be paved. However, if the wearing course was applied, and the monies were not released from the LOC, SEI's relationship with its vendors and lenders would be jeopardized.

78.     SEI, based on the Township's obdurate insistence on added conditions, and its threat to refuse to release the escrow monies, retained the services of engineers, at substantial additional cost, to conduct core sampling and analysis.  The result of that analysis was that the base course, as expected, passed with flying colors.

14

79.     The Township's attempt to tie up SEI's LOC in order to randomly add costly conditions to the repaving of Winchester Road was just another example of its wanton acts of retaliation and harassment directed towards the Plaintiffs.

80.     The Township also added substantial, punitive conditions to final plans which were not included in the tentative plans. By way of example, the Township changed the curb specifications, added the construction of a drainage swale and added the project to widen Route 611 at the intersection of Frost Hollow Road.

81.     The Township also, for no legitimate reason, in further retaliation, restricted the issuance of building permits for Phase 7 to anywhere from 9 to 17 permits at a time, tied to the timeline for completing certain events in regards to the widening of Route 611. Prior thereto, all building permits for a particular phase of the Development were issued as soon as plans were filed.

82.     The restriction on the issuance on building permits harmed the Plaintiff in that it, among other things caused Plaintiffs to lose an opportunity to sell phase 7 to another developer for $8,000,000.00.

83.     The Township's pursuit of its vendetta has consisted of other acts as well including but not limited changing the terms and conditions for development all of which has harmed and will continue harm the Plaintiffs.

## IV.    CLAIMS

### COUNT I
### RETALIATION

84.     Plaintiffs incorporate the forgoing paragraphs as if set forth expressly below.

85.     The Plaintiffs engaged in protected conduct under First Amendment including but not limited to their objections to the Township's unlawful attempts to bill the Plaintiffs for

inspections and professional fees that were not due, their objections to the Township's commencement and prosecution of the Fee case, their defense of the meritless allegations in the Tree Case and their prosecution of a counterclaim for abusive litigation in the Tree Case.

86.     As a result of the exercise of their rights, the Township has retaliated against the Plaintiffs by, *inter alia*, prosecuting and commencing meritless and/or otherwise abusive litigation such as the Tree Case, prosecuting and commencing meritless and/or otherwise abusive litigation such as the claim for alleged zoning violations, prosecuting and commencing meritless and/or otherwise abusive litigation such as the Escrow Case and prosecuting and commencing meritless and/or otherwise abusive litigation such as the PRD Case, by attempting to terminate the Plaintiffs' right to develop its property as a planned residential development, by imposing unreasonable and unconscionable conditions on the Plaintiffs and by denying the Plaintiffs the Equal Protection of the laws.

87.     The Plaintiffs have a right under the First Amendment to complain to public officials about the Township's activities and seek judicial redress for its actions.

88.     The temporal proximity of the Defendants' acts as aforementioned as well as the pattern of antagonism establishes that the acts were retaliatory.

89.     Howell and Kline knew and/or should have known that their actions violated clearly established laws and constitutional rights.

90.     Through their actions, policies, practices and conduct directed at Plaintiffs Defendants have retaliated against the Plaintiffs for exercising their Constitutional rights in violation of 42 U.S.C.A. § 1983.

91.    As a result of the conduct set forth above, the Defendants have suffered damage to its reputation and business including, but not limited to, the loss of an $8,000,000.00 contract to sell phase 7.

**WHEREFORE**, the Plaintiffs hereby request the entry of judgment in their favor against all of the Defendants, jointly and severally, in an amount in excess of $100,000.00 in compensatory damages, along with punitive damages, attorneys' fees, cost of suit and such other relief as this Honorable Court deems just and equitable.

## COUNT II
## EQUAL PROTECTION

92.    Plaintiffs incorporate the forgoing paragraphs as if set forth expressly below.

93.    The Plaintiffs have intentionally been treated differently by the Township than other similarly situated developers including, *inter alia*, being sued for alleged zoning violations for cutting down Trees they actually own, and being sued for the replenishment of escrow accounts for phases that are either complete or nearly complete.

94.    There is no rational basis for such different treatment and such treatment is in retaliation for exercising their Constitutional rights.

95.    Howell and Kline knew and/or should have known that their actions violated clearly established laws and constitutional rights.

96.    Through their actions, policies, practices and conduct directed at Plaintiffs Defendants deprived Plaintiffs of Constitutional rights to equal protection under the law in violation of 42 U.S.C.A. § 1983 and the Fifth and Fourteenth Amendments to the Constitution of the United States.

97.    As a result of the conduct set forth above, the Defendants have suffered damage to its reputation and business.

**WHEREFORE**, the Plaintiffs hereby request the entry of judgment in their favor against all of the Defendants, jointly and severally, in an amount in excess of $100,000.00 in compensatory damages, along with punitive damages, attorneys' fees, cost of suit and such other relief as this Honorable Court deems just and equitable.

## COUNT III
## ABUSE OF PROCESS

98.    Plaintiffs incorporate the forgoing paragraphs as if set forth expressly below.

99.    Kline and Howell have adopted a policy to pervert the use of process for a purpose that is not the purpose for which the law intends in that they have employed baseless litigation to retaliate against and the Plaintiffs for their exercise of their Constitutional rights.

100.    Kline and Howell's perversion of the legal process to retaliate against the Plaintiffs has caused the Plaintiffs harm including, but not limited to, the unnecessary expenditure of legal fees and costs to defend those actions.

**WHEREFORE**, the Plaintiffs hereby request the entry of judgment in their favor against the Kline and Howell, jointly and severally, in an amount in excess of $100,000.00 in compensatory damages, along with punitive damages, attorneys' fees, cost of suit and such other relief as this Honorable Court deems just and equitable.

## COUNT IV
## MALICIOUS PROSECUTION

101.    Plaintiffs incorporate the forgoing paragraphs as if set forth expressly below.

102.    In commencing the Tree Case claiming to own The Trees, and/or amending the complaint to reallege the same claims to ownership of The Trees, Kline and Howell acted in a grossly negligent manner and/or without probable cause.

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| GARY J. STRAUSSER, Individually, and | : | CIVIL ACTION |
| STRAUSSER ENTERPRISES, INC. | : | |
| v. | : | |
| TOWNSHIP OF FORKS, KARL KLINE, ESQUIRE, | : | |
| DAVID L. HOWELL | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X)


| | | |
|---|---|---|
| December 9, 2009 | Patrick C. Campbell, Jr. | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-891-8100 | 215-246-2211 | rgpa@icdi.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

103.   Kline and Howell acted primarily to retaliate against the Plaintiffs and not for the purpose of securing joinder, discovery or adjudication of the claims to the ownership and removal of the Trees.

104.   On or about November 13, 2009, after being admonished by the Court that the continued pursuit of the claims premised on the allegation that it owned the trees could be sanctionable, the Township finally withdrew those claims.

105.   Notwithstanding that the claims for the ownership of the trees have finally terminated in the Plaintiffs' favor, the Plaintiffs have incurred damages from those claims including but not limited to attorneys fees, costs and harm to their reputation and standing.

**WHEREFORE**, the Plaintiffs hereby request the entry of judgment in their favor against the Kline and Howell, jointly and severally, in an amount in excess of $100,000.00 in compensatory damages, along with punitive damages, attorneys' fees, cost of suit and such other relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

BY: _____
PATRICK C. CAMPBELL, JR. (PA 53350)
(rgpa@icdc.com)
HAINES & ASSOCIATES
1835 Market Street, Suite 2420
Philadelphia, PA 19103
(215) 246-2200
(215) 246-2211 (fax)
*Attorney for Plaintiffs*

Dated: December 9, 2009

19